## No. 13,348.

### REX *v.* CONTINENTAL CASUALTY COMPANY.
(44 P. [2d] 911)

Decided April 1, 1935.   Rehearing denied April 29, 1935.

Mr. JAMES J. SULLIVAN, for plaintiff in error.

Messrs. BARTELS, BLOOD & BANCROFT, Mr. ARTHUR H. LAWS, for defendant in error.

*In Department.*

Mr. Justice Young delivered the opinion of the court.

This is a suit on an accident insurance policy. At the close of the evidence and upon motion of defendant by its attorneys, plaintiff was nonsuited on her claim in excess of $5,542.53, the court directed a verdict in her favor in that amount and judgment was entered accordingly. Error is assigned. The parties appear here in the same order as below and reference will be made to them in this opinion as plaintiff and defendant.

The defendant issued an accident policy to one William M. Rex, the husband of the plaintiff, who was named as beneficiary therein, insuring him against "loss of life * * * resulting from personal bodily injury * * * which is effected solely and independently of all other causes by the happening of a purely accidental event. * * *" Insured was at the time general manager of the Ingleside Limestone Company, a subsidiary corporation of the Great Western Sugar Company. The face of the policy was $9,000. The insured was classified as a select risk, and his duties described in the policy as "General manager, office and traveling duties only."

The policy contained the following provision: "This policy includes the endorsements and attached papers if any, and contains the entire contract of insurance except as it may be modified by the Company's classification of risks and premium rates in the event that the Insured is injured after having changed his occupation to one classified by the Company as more hazardous than that stated in the policy, or while he is doing any act or thing pertaining to any occupation so classified, except ordinary duties about his residence or while engaged in recreation, in which event the Company will pay only such portion of the indemnities provided in the policy as the premium paid would have purchased at the rate but within the limits so fixed by the Company for such more hazardous occupation."

While the policy was in force, William M. Rex was in-

stantly killed, being run over by a loaded tram at the quarry belonging to the Ingleside Limestone Company, at Guernsey, Wyoming. The "affidavit of claimant for indemnity" sent in by plaintiff, widow of the deceased, contains this question and answer: "What was the deceased doing at the time of accident? A. Inspecting plant." The affidavit is sworn to by the plaintiff. On the trial, in response to questions, she testified in part as follows: "Q. What happened there [At the office of the general agent of the defendant company]? A. Well, he [the general agent] told me that he regretted that his company could only pay me $5,543.53, and I asked him why and he said because Mr. Rex had engaged in something very much more hazardous than he was supposed to do. Well, of course, I did not know exactly what Mr. Rex was doing, so I asked him to explain himself. * * * Q. At the time you made and sent to the defendant company this paper marked exhibit 1 [the report of death], where did you get the information that you gave there concerning the circumstances of Mr. Rex's death? A. Well, of course, I was here, and so I just took for granted those up there were qualified to say, and I merely copied it. * * * Q. Did you know of your own knowledge at the time just what Mr. Rex was doing when he was killed? A. No, I did not. Q. You just took the statements given you by someone else? A. That is all. I did not think it was necessary to make an investigation. They required that these affidavits be sent in." Mr. Haskell, the insurance manager of the Ingleside Limestone Company, who was not present at the time of the accident, in his unsworn report to the company, to the question: "If injured on duty, what work was he engaged in at the time of the accident?" replied "Supervising and Inspection of Quarry."

Witness Fowler testified that he was the superintendent of the quarry; that deceased had no connection with the operation of the quarry at the time of his death, except as manager for the limestone company, and that deceased

was not doing anything in connection with the operation of the quarry or tramway at the time of his death. The record discloses that Rex came to his death while he was at the quarry, but contains nothing showing why he was there other than the two statements filed, which in the light of the other testimony in the record are purely hearsay. Fowler was the only eyewitness who testified.

■ When plaintiff established the death of insured to have been accidental, she made out a prima facie case under the terms of the policy and the burden then was upon the defendant, if it would avoid payment, to show that the accident was within one of the exceptions named in the policy. *Hess v. Preferred Masonic Mut. Acc. Ass'n of America,* 112 Mich. 196, 70 N. W. 460.

■ The defendant company contends that deceased, at the time of his death, was doing an act or thing pertaining to an occupation which it had classified as more hazardous than the one under which he was insured, namely, performing an act which it classifies under the heading of "quarry: proprietor, inspecting only, not superintending." Defendant further contends that under this classification, deceased's premium paid for only $5,542.53 insurance, which amount it offers to pay in full satisfaction of plaintiff's claim.

When the defendant company and insured entered into the contract and classified the latter as a select risk with the duties of "General manager, office and traveling duties only," the parties by the use of those words intended that there were certain duties the insured might perform, and if he was injured or killed in the course of their performance, he or his beneficiary could recover the face of the policy. There were certain other things the parties had in mind, incidental to classifications more hazardous, and also not incidental to the duties of "general manager, office and traveling duties only," that, if insured did them, would entitle defendant company to scale down the amount to be paid for an injury or death occurring while he was doing them.

It is assumed that when the parties classified the deceased as general manager of a limestone company with office and traveling duties, they had in mind that he would do the things general managers of such concerns usually do. It also is assumed that when the general manager traveled he did so, not merely for the sake of traveling, but with a destination in view and duties to be performed upon his arrival. All the duties of a manager of a limestone company, in the very nature of things, cannot be carried on within the confines of an office. It would be a narrow construction of the policy to say that deceased was within its terms when he was sitting in his office and when he was actually traveling, but ceased to be insured when he had arrived at his destination even though he was engaged in the performance of duties that pertained to the general management of the business. It seems to us to be a logical conclusion that an act may at the same time pertain to two occupations, one of which is more hazardous than the other. There may be cases where an act performed is so foreign to the work specified in the classification set forth in a policy as to show that it could not pertain to two classifications. For example, the mere statement that one classified as clerk in a dry goods store was injured accidentally while diving for buried treasure discloses the impossibility of the act performed pertaining to an occupation under the classification of dry goods clerk.

We think the act of the deceased merely in walking down the track, as shown by the testimony of witness Fowler, was not so variant from the duties of one within the classification fixed in the policy, as to justify a court in declaring as a matter of law, that it did not pertain to the occupation embraced in such classification. It may also have pertained to another occupation, but if so, that fact alone does not exclude it from the occupation as classified in the policy. The written statements of the wife and of Mr. Haskell sent to the company by the wife

were competent evidence under the authority cited by counsel for defendant in his brief, in which it is said: "Our conclusion in the instant case is that the facts stated in the proof of death furnished to the defendant by the plaintiff were admissible against her as solemn declarations against interest and were sufficient to establish such facts in the absence of any attempt upon the part of the plaintiff to contradict or modify them by explanation." *Tobin v. Nat. Cas. Co.,* 63 Cal. App. 578, 585, 219 Pac. 482. The record in the instant case clearly shows that the statements in these written documents were not within the personal knowledge of either plaintiff or Mr. Haskell. Fowler was the superintendent. Deceased, at the time of the accident was not doing anything in connection with the operation of the quarry or the tramway and he had no connection with the quarry other than as general manager of the Ingleside company. Plaintiff having made out a prima facie case when the death of her husband by accident was admitted, and the burden being on the defendant to show that death was within one of the exceptions of the policy in order to scale down the amount to be paid, we think the situation was not so clear that the court should have said that reasonable men could not differ as to the conclusions to be drawn from the evidence; but that they must conclude that deceased was doing an act that did not pertain to his occupation as classified in the policy, and that did pertain to an occupation classified by the defendant as more hazardous.

The trial court properly stated the issues when he said: "I presume the thing that is in issue here is that he [deceased] was general manager of the company and his duties were office and traveling only. What do those terms mean, and did the duties he was performing at the quarry on this date come within those general terms? That is the issue of fact, and the only issue of fact, there is in the case."

The case should have been submitted to the jury. The

judgment is reversed and the cause remanded for further proceedings.

MR. CHIEF JUSTICE BUTLER and MR. JUSTICE BURKE concur.