ELLIS, Judge.
Jasper Brasseaux was killed in an automobile accident which occurred near Eunice, La. on October 13, 1955 at approximately 12:45 p. m. This suit was instituted by Beulah Brasseaux, widow of Jasper Brasseaux, to recover under two life insurance policies issued by First National Life Insurance Company. Judgment was granted for the defendant insurance company in the district court and plaintiff has appealed from this judgment.
The decedent had two policies with the defendant insurance company. Policy No. 2212992 has a face amount of $500 straight life insurance and a double-indemnity provision in the event of insured’s accidental death, this latter proviso being subject to certain exclusions. Policy Number 2212991 is an accidental death policy with a face amount of $2,000 and contains similar exclusions.
*257 The pertinent provisions of the $500 policy are that the “Accidental Death Benefit does not cover * * * death while the Insured is under the influence of intoxicating liquors or narcotics, or death resulting from the use of intoxicating liquors or narcotics.”
The $2,000 policy provides that this “Policy does not cover death * * * (3) while the insured is under the influence of intoxicating liquor or narcotics.”
Upon investigation, the insurance company concluded that the insured was inebriated at the time of his death. Recovery was allowed on the face amount of the $500 policy, but denied on the double indemnity provisions of the $500 policy. Recovery was similarly disallowed under the $2,000 accidental death policy.
The aggrieved beneficiary filed the instant suit contending that the insured was not intoxicated at the time of his death.
Opposing counsel stipulated, on the trial on the merits, that the policies sued upon were both in effect at the time of insured’s death and that plaintiff was the named beneficiary in both of the policies.
It was further stipulated “that the sole issue before the court in this case is whether or not the named insured was intoxicated at the time of his death, in which event, if he were, the beneficiary and plaintiff in this suit is not entitled to recover at all and if he were not, she is entitled to recover in accordance with the provisions of the two policies.”
The rule recognized in the case of Swope v. Federal Surety Co., 1930, 171 La. 369, 131 So. 50, is that in this type of case the defendant insurance company has the burden of proving, by a preponderance of the evidence, that the insured was intoxicated at the time of his death.
Despite the stipulations quoted above, plaintiff’s counsel contends that if the defendant succeeds in this respect, it must also prove a causal connection between this intoxication and the fatal accident. He cites several authorities. This court feels that this point is not controlling on this appeal. The trial judge found that “the death occurred while the insured was under the influence of intoxicating liquors to such an extent that his judgment with respect to driving was impaired.” If this court concludes that the trial court’s findings were not manifestly erroneous, then both the intoxication and the causal connection are present. In the alternative, the only conflicting testimony indicates that the insured was sober at the time of his death and, if believed, would completely defeat the exclusionary terms of the policies without a necessity of determining a causal connection.
Defendant’s attorney introduced the testimony of three witnesses in support of his contentions, these witnesses being a police officer, who investigated the accident, a waitress, who saw the insured twice on the morning of the accident, and a second police officer who saw the insured shortly before the fatal accident.
The State Policeman, Patrolman Gole-man, testified that he investigated the accident, that in his opinion the insured’s vehicle was in the wrong lane when it collided headon with an oncoming car, that a whiskey bottle had broken open in insured’s car, its contents spilling over the interior of the car, and that he had noted in his report that the insured was drunk because the only eye witness gave him this information. No blood tests were run to determine whether or not the insured was intoxicated.
Young’s cafe was located near the scene of the accident. One of the waitresses from this cafe testified that she had seen the insured twice on the morning of his death, the first time at about ten o’clock in the morning and the second time shortly before the time of the accident. She testified that the insured was drinking on both oc *258 casions and that he drank both whiskey and beer.
The waitress stated that Oleus Young, who was both the owner of the cafe and a sergeant in the State Police, was present the second time that the insured came by Young’s cafe. She also testified that the insured left the cafe in a drunken condition, that he sped away in his car and that she saw the accident occur at a distance.
Oleus Young corroborated the testimony of the waitress concerning the insured’s drunken condition just prior to the accident. He also stated that he had seen the plaintiff without her husband in a night club after 1:00 a. m. the night before the accident. This conflicted with the plaintiff’s statement that she went home and went to sleep with her husband at about 12:00 p. m. that night. He further testified that the insured talked with him at length concerning the insured’s marital difficulties.
Plaintiff’s counsel introduced plaintiff’s testimony and the testimony of a taxi driver, the owner of a service station, and the plaintiff’s nephew. The taxi driver and the garage owner both testified that they had seen the insured on the morning of the accident. The record shows that the taxi driver saw him between 8:00 and 9 o’clock. The owner of the service station saw him between 10:00 and 12 o’clock. Neither of these witnesses would set an exact time but both stated insured look neat and sober.
Norman Gaspard, plaintiff’s nephew, testified that he was with Brasseaux off and on all of the morning of the accident until 12:00 a. m. and that Brasseaux did not drink any alcoholic beverages during this time.
Plaintiff testified, as stated above, that she went home around 12 o’clock with her husband the night before the accident. She also stated that she saw her husband around the house on the morning of the accident and that he drove her to the Tri Parish Fair in Eunice and let her out about 12:25 p. m. Her testimony is that her husband did not drink any intoxicating beverages on the morning of the wreck.
The record is somewhat lengthy and Brasseaux’ whereabouts and actions on the morning of the accident are brought out in elaborate detail. There are some discrepancies in estimating the time of certain occurrences in the testimony of both plaintiffs’ witnesses and defendants’ witnesses.
These discrepancies are not surprising and this court does not feel that they are significant. It would serve no purpose here to go into the elaborate details of the testimony or point out each discrepancy. Suffice it to say, that the important points in the testimony are reviewed above.
The trial judge had the opportunity to see the witnesses testify and judge their credibility. Due to the direct conflict in the testimony, this is one of the most important points in the case. We feel that there is ample evidence in the record to support the trial court’s conclusion and we hereby adopt its findings.
For the reasons assigned above, the judgment appealed from is affirmed in its entirety; costs of this appeal to be taxed to plaintiff.
Affirmed.