**Norma M. LONG, as surviving spouse and beneficiary of William R. Long, Jr., Plaintiff,**

**v.**

**The UNITED STATES LIFE INSURANCE COMPANY IN the CITY OF NEW YORK, Defendant.**

**Civ. A. 66–C–431.**

United States District Court
D. Colorado.

June 28, 1967.

Raymond A. Magnuson, Fort Collins, Colo., for plaintiff.

White & Steele, by John E. Clough, Denver, Colo., for defendant.

MEMORANDUM OPINION AND ORDER

ARRAJ, Chief Judge.

Plaintiff's husband, William R. Long, Jr., a retired United States Air Force sergeant, was the insured in a group policy issued by defendant. The policy was in the principal sum of $15,000 and contained a double indemnity provision

in case of accidental death. Plaintiff was the named beneficiary.

While the policy was in full force and effect, the insured was involved in a one-car accident, in which car he was the driver; he was thrown from the car, received a broken neck and other injuries from which he died.

On proof of death defendant paid to beneficiary the face amount of the policy but refused to pay the double indemnity claiming that decedent's death came within one of the "exclusions" of the policy. By this action, plaintiff seeks to recover under the accidental death provisions of the policy.

The pertinent facts as disclosed at trial are as follows: Decedent retired from the United States Air Force in January 1965. Immediately prior to his retirement he had been stationed at Fort Warren Air Base near Cheyenne, Wyoming. Shortly after retirement he moved with his family to Fort Collins, Colorado. On December 9, 1965, the date of his death, he was employed by a Fort Collins store as a carpet salesman and supervisor. On the afternoon of December 9, 1965, decedent drove to Fort Warren Air Base to make a bid to carpet the lounge and lobby in the non-commissioned officers' club on that base. Decedent arrived at the base at approximately 2:00 p. m. and attended a meeting of the Board of Governors at which the carpet bids were considered; he was in attendance at that meeting until it broke up at approximately 4:00 p. m.

After the Board of Governors meeting ended, decedent offered to buy a beer for those present; several accepted his offer, but there was no evidence as to whether or not decedent drank any beer or other intoxicants at that time. Shortly before 5:00 p. m. decedent went to another part of the club where a group of members were having a private party for a lieutenant who was retiring from the service. Decedent was acquainted with many of those in attendance and had one glass of beer at that party. Beer apparently was the only alcoholic beverage served at the party. Decedent left the club at about 5:15 p. m.; his carpet samples were stacked in the front seat of the car adjacent to the driver's seat. Four witnesses who were at the club testifed that they had known Long for some time prior to this date and that at the time they last saw him on December 9, he was not intoxicated and did not appear abnormal in any way. Before leaving the club, Long told one of the men that he was going to the commissary on the base to get some groceries and then to his home.

Decedent, driving alone, proceeded south on Highway 87 toward his home in Fort Collins. This is a divided concrete highway with asphalt shoulders, having two northbound and two southbound lanes with a median strip between them. At a point approximately 14 miles south of Warren Air Force Base on a straight stretch of the highway, decedent lost control of his car and it went into the median strip for approximately 100 feet, then turned abruptly to the right, going across the paved highway into the borrow pit on the right side of the highway. It traveled approximately 150 feet in the borrow pit and came to rest approximately 50 feet from the right shoulder of the road. The vehicle had turned over one or more times and apparently had thrown decedent out, for his body was found approximately 25 feet from where the car had come to rest.

An unidentified person had notified the authorities. Long was dead by the time the state patrolmen reached the scene at about 7:00 p. m.

At the time of the accident the road was dry, the weather clear and cold, and it was dark. There were no fences along the highway or right-of-way, and the adjacent land is gently rolling and utilized largely for ranching.

The speed limit at the point of the accident was 70 miles per hour. The left front tire of the vehicle blew out either immediately before or during the accident; the lights on the car were not functional after the accident, and

it is not known whether they became inoperative before or during the accident. The carpet samples and some groceries were found in the car. There was no evidence of any alcoholic beverages or empty containers having been found in or near the vehicle.

The body was taken to the Warren Mortuary at Fort Collins, Colorado, by the deputy coroner of Larimer County. A blood sample was drawn in a vial by him that evening and placed on a shelf in the mortuary where it remained overnight. Sometime the next morning the vial was delivered to Dr. Dale Maag, a clinical chemist at Colorado State University, and subsequently the contents were tested by him for blood alcohol content. He found it to be 0.175 per cent. None of the blood contained in the sample was preserved, and the vial was sterilized and subsequently re-used in other tests. No seal was placed on the sample after it was drawn by the deputy coroner and no identification marks were placed on it by him. Eight or more persons had access to the room where the vial was kept in the mortuary overnight; the deputy coroner testified that it appeared to be in the same condition the next morning as it was when he placed it there the previous night. Defendant offered Dr. Maag's signed report of Blood Alcohol Determination into evidence and upon objection by plaintiff it was not received. The blood alcohol test was made for "statistical purposes" for the Colorado State Patrol. The exhibit was not offered as an official record under Rule 44, Rules of Civil Procedure.

■ The pertinent provision of the insurance policy with which we are concerned is as follows:

## EXCLUSIONS

No payment shall be made under the Group Accidental Death and Dismemberment Policy for any loss resulting from or caused directly or indirectly, wholly or partially, by
* * *

* * * * * *

(e) the member's being intoxicated
* * *.

The ultimate issue to be determined is whether the insured's death comes within the above exclusion. Although defendant contends that plaintiff has the burden of proving that the death does not come within the exclusion provision, we believe that the Colorado rule and the weight of authority in other jurisdictions is to the contrary. See Vol. 21, Appleman's Insurance Law and Practice, Section 12176, pp. 125, 126; Rex v. Continental Casualty Co., 96 Colo. 467, 44 P.2d 911 (1935).

■ This was a violent, external and unexplained death; as such it is presumed to be accidental. National Farmers Union Life Ins. Co. v. Norwood, 147 Colo. 283, 289, 363 P.2d 681.

In Rex v. Continental Casualty Co., supra, the Colorado Supreme Court said

When plaintiff established the death of insured to have been accidental, she made out a prima facie case under the terms of the policy and the burden then was upon the defendant, if it would avoid payment, to show that the accident was within one of the exeptions named in the policy.

See, also, Brasseaux v. First National Life Ins. Co., 102 So.2d 256 (La.App. 1958).

A peculiarly apposite case is Bowers v. Great Eastern Casualty Co., 260 Pa. 147, 103 A. 536 (1918). There the insured lost his life in an automobile accident, and the action was brought to recover on the policy issued by defendant. The company denied liability on the ground that the accident and death, occurring as they did here, were not within the terms of the insurance contract; specifically, it was claimed that at the time of the accident the assured was affected by intoxicants, that he was violating the law in maintaining the speed he did, and that he was thus exposing himself unnecessarily to obvious danger. Section 4 of the insurance policy provided:

This insurance *does not cover* * * * *injuries fatal or otherwise, resulting wholly or in part, directly or indirectly from, or while, or in the*

*consequence of being affected by intoxicants, * * * unnecessary exposure to obvious danger, * * * violating laws.* (Emphasis supplied). The court held that "the defense being affirmative in character, defendant assumed the burden of showing that the assured, when the accident occurred, was affected by intoxicants, was violating the law, and exposing himself to unnecessary danger".

■■ It is our opinion that defendant in the case at bar has failed to sustain its burden. The report of the blood alcohol test was not received in evidence; consequently there is no competent evidence of assured's having been intoxicated. However, even if that report were in evidence and the Court were to consider it as fully credible, the defendant still has failed to sustain its burden. Defendant has not shown that the accident and subsequent death were "caused directly or indirectly, wholly or partially, by decedent's having been intoxicated". The physical evidence is that the left front tire of the vehicle was flat; this very well could have caused the car to veer to the left, go down the median strip, and if assured attempted to get back on the paved portion of the highway, the flat tire could have caused the ultimate loss of control of the vehicle. The lights were inoperative at the time the patrolmen reached the car to investigate the accident; it may have been that the sudden loss of his headlights on this dark night caused assured to lose control of his car. Decedent was traveling on a main north and south highway from Colorado to Wyoming, and it may have been that the bright lights of a car approaching in the opposite direction temporarily blinded him and caused him to lose control of his vehicle. There is no evidence in the record suggesting that he was not driving on that day in a careful manner or that he ever had a propensity for careless driving. Additionally, there is no showing in the record that the assured ever drank to excess. The evidence is that he did not.

Even assuming he was intoxicated, he may have exercised due care beyond criticism. No causal connection is shown between the death of Long and his claimed intoxication. Cf., Croteau v. Lunn & Sweet Employees' Ass'n, 124 Me. 85, 126 A. 284.

Defendant, having failed to sustain its burden of showing that assured's death falls within an exclusion of the policy, plaintiff is entitled to judgment in the sum of $15,000, plus interest at 6 per cent from January 5, 1966. The Clerk will prepare an appropriate judgment.

This constitutes my findings of fact and conclusions of law in compliance with Rule 52, Rules of Civil Procedure.