Peter S. RODRIGUEZ, a minor, By and Through his mother, conservator, natural parent and next friend, Tracey RODRIGUEZ; Sean Rodriguez and Tracey Rodriguez, individually, as assignees of Laura Brimmer, Plaintiffs–Appellants,

v.

SAFECO INSURANCE COMPANY OF AMERICA, a Washington corporation, Defendant–Appellee.

No. 90CA37.

Colorado Court of Appeals, Div. V.

May 23, 1991.

Rehearing Denied July 25, 1991.

Certiorari Denied Dec. 23, 1991.

Roger T. Castle, P.C., Roger T. Castle, Denver, for plaintiffs-appellants.

Long & Jaudon, P.C., Joseph C. Jaudon, Robert M. Baldwin, Denver, for defendant-appellee.

Opinion by Judge HUME.

Plaintiffs, Sean, Tracey, and Peter S. Rodriguez, appeal a summary judgment entered in favor of defendant, Safeco Insurance Company of America. We affirm.

In 1987, Peter, then a three-month-old infant, suffered a traumatic head injury that resulted in severe brain damage while he was being cared for by Laura Brimmer, who operated a licensed child day care business in her home. Brimmer had in effect liability insurance for her day care business under a $500,000 policy issued by Scottsdale Insurance Company and homeowner's insurance under a policy issued by Safeco.

Brimmer notified both insurance companies of the injury and of plaintiffs' subsequent damage claim in which plaintiffs alleged that she had negligently failed to provide proper care and supervision for Peter. Scottsdale undertook Brimmer's defense of plaintiffs' claims, but Safeco denied coverage under the homeowner's policy.

Plaintiffs' claim against Brimmer was settled without trial by entry of a stipulated judgment in favor of plaintiffs in the amount of $875,000. The judgment also provided for assignment of Brimmer's rights under the Safeco homeowner's policy to plaintiffs.

After Scottsdale paid the $500,000 limits of the business insurance policy in partial

satisfaction of the judgment, plaintiffs, as Brimmer's assignees, brought this action against Safeco, asserting claims for breach of the homeowner's insurance contract and bad faith denial of coverage. Both sides moved for summary judgment, and the trial court granted Safeco's motion, thereby dismissing plaintiffs' claims.

## I.

Plaintiffs contend that the trial court erred as a matter of law in concluding that the language of the Safeco homeowner's policy did not provide coverage for Peter's injuries. We disagree.

■ Summary judgment is proper only if the pleadings, affidavits, and other materials presented establish that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *Continental Air Lines, Inc. v. Keenan,* 731 P.2d 708 (Colo.1987).

■ An insurance policy is a contract which must be interpreted consistently with settled principles, and absent the manifestation of a contrary intention within the four corners of the contract, the words used in the policy must be accorded their plain and ordinary meaning. If a contract is clear and unambiguous, a court should not rewrite it so as to arrive at a strained construction. *Chacon v. American Family Mutual Insurance Co.,* 788 P.2d 748 (Colo.1990).

The pertinent facts underlying this action are not in dispute. Brimmer publicly advertised and regularly conducted a state-licensed commercial business providing day care services for children in her home. She reported her earnings from that activity as business income on state and federal tax returns and purchased liability coverage for the business from Scottsdale. As part of her established business activities, she had provided care for Peter in exchange for compensation on a regular basis for some time prior to the date of his injury.

On the morning of Peter's injury, the child's mother left him, apparently in good health, in Brimmer's care. Brimmer fed the child without incident, and placed him alone in a crib in a bedroom of her residence for a nap while she conducted routine household activities and generally watched and cared for other day care children inside the house. About two hours after putting the child down for his nap, she returned to the bedroom where she found him still in his crib but pale, limp, lethargic, and experiencing difficulty breathing.

After some delay, Brimmer contacted the child's mother, who then arranged for a medical examination that revealed his head injury. There is no evidence indicating how the trauma was inflicted or that anyone other than Brimmer had contact with the child or was inside the bedroom during the two-hour period of his nap.

The Safeco homeowner's policy provides personal liability and medical payments coverage for injuries to persons who are in Brimmer's home with her permission. However, the policy expressly excludes coverage for injuries "arising out of business pursuits of any insured" except for "activities which are ordinarily incident to non-business pursuits."

It is undisputed that the injury occurred on the insured premises while Peter was there with the permission of the insured. It is also undisputed that the injury occurred while Peter was under Brimmer's care in the course and within the scope of her business pursuits.

■ Initially, we note that an assignee of rights under a contract has no greater rights than those of his or her assignor. *Matson & Mulhausen Construction Co. v. Boulevard National Bank,* 28 Colo.App. 427, 475 P.2d 356 (1970). Accordingly, plaintiffs are entitled to no greater rights against Safeco than those provided to Brimmer under the homeowner's policy.

Thus, the sole issue is whether, under these undisputed facts, any basis exists to support an inference that Peter's injury was caused by "an activity ordinarily incident to a nonbusiness pursuit" as provided by the exception to the exclusion of coverage under the Safeco policy.

Policies containing language similar or identical to that of the Safeco policy have been interpreted by courts in other jurisdictions, but the issue presented is one of first impression in Colorado.

One line of authority relied upon by plaintiffs is represented by *Crane v. State Farm Fire & Casualty Co.,* 5 Cal.3d 112, 95 Cal.Rptr. 513, 485 P.2d 1129 (1971). In that case the court analyzed the exception to the exclusion, using the following language:

"Indeed, it is difficult to conceive of an activity more ordinarily incident to a non-commercial pursuit than home care of children."

That interpretation, however, gives no effect to the policy language providing a "business pursuits" exclusion from coverage in the event of a bona fide business providing home care for children. Its effect is to accord coverage for activities related to child care whether they are performed as a part of a "business pursuit" or not. Under that rationale the "nonbusiness pursuits activities" exception swallows up the "business pursuits" exclusion so as to render it ineffectual and meaningless with respect to child care activities.

A second line of cases, represented by *Republic Insurance Co. v. Piper,* 517 F.Supp. 1103 (D.Colo.1981), appears to focus narrowly on the language of the "business pursuits" exclusion clause while giving little or no effect to the language stating that "activities which are ordinarily incident to non-business pursuits" are not excluded, as is apparent from the following language:

"It seems to me and I find that nothing could be more a part of the business of operating a day care home than supervision of the children under the licensee's care, and it was while supervising the child that the tort occurred."

That rationale presents the obverse of the *Crane, supra,* analysis, in that it proceeds from the premise that any and all activities employed during the care and supervision of children in a commercial day care operation must necessarily fall within the "business exception" to coverage, without regard to whether such activities are "ordinarily incident to non-business pursuits." Thus, under that interpretation, any act or omission by a day care operator that causes an injury to a child while under day care supervision is excluded from coverage.

In our view, both the *Crane, supra,* and *Piper, supra,* analyses fail to give rational meaning to the entirety of the language of the insurance contract clause in question. *See Gandy v. Park National Bank,* 200 Colo. 298, 615 P.2d 20 (1980).

■ We believe a better approach is provided by those authorities adopting a "particular activities" test to determine liability in these kinds of cases. *See Gulf Insurance Co. v. Tilley,* 280 F.Supp. 60 (N.D.Ind. 1967); *Nationwide Mutual Fire Insurance Co. v. Collins,* 136 Ga.App. 671, 222 S.E.2d 828 (1975); *State Farm Fire & Casualty Co. v. Moore,* 103 Ill.App.3d 250, 58 Ill.Dec. 609, 430 N.E.2d 641 (1981); *Robinson v. Utica Mutual Insurance Co.,* 585 S.W.2d 593 (Tenn.1979). In those cases, the courts first analyzed the facts to determine whether the injury arose within the context of the insured's business or commercial pursuits and, if so, then proceeded to a careful scrutiny of the particular activity causing the injury to determine whether that activity was ordinarily incident to non-business pursuits.

■ No specific non-business activities attributable to Brimmer have been alleged or demonstrated as the causative force of Peter's injury. Hence, we conclude that even if the trial court erred by applying the *Piper, supra,* standard in analyzing the undisputed evidence, the decision would not be altered by application of the "particular activity" standard which we now adopt.

II.

Plaintiffs next contend that the trial court erred in determining that they bore the burden of proving facts bringing them within the exception to the policy exclusion. We disagree.

 The trial court properly held that plaintiffs, as assignees of the insured, had the initial burden to prove their entitlement to recover under the general provisions of the policy and that the insurer had the burden to prove the applicability of the "business pursuits exclusion" to exempt it from liability. *Rex v. Continental Casualty Co.*, 96 Colo. 467, 44 P.2d 911 (1935); *Surdyka v. DeWitt*, 784 P.2d 819 (Colo.App.1989). The court also correctly concluded that the plaintiffs had the burden of proving Safeco's ultimate liability and, in particular, the applicability of the exception to the exclusion upon which they posited their claim after Safeco had made a *prima facie* showing that the injury resulted from "business pursuits." *See Watkins v. Security Benefit Ass'n*, 81 Colo. 66, 255 P. 452 (1927). *See also Weger v. United Fire & Casualty Co.*, 796 P.2d 72 (Colo.App.1990).

Here, as in *Watkins, supra*, because the undisputed facts demonstrate the applicability of the exclusion to coverage, it was incumbent upon the insured, or her assignees, to demonstrate the existence of facts supporting an exception to the exclusion.

### III.

Plaintiffs finally contend that the trial court erred in concluding that the policy in question was unambiguous. We disagree.

 If the meaning of an insurance policy is expressed in plain, certain, and readily understandable language, it must be enforced as written. *Northern Insurance Co. v. Ekstrom*, 784 P.2d 320 (Colo.1989).

 The mere fact that the parties differ in their interpretation of an instrument does not, of itself, create an ambiguity. *Radiology Professional Corp. v. Trinidad Area Health Ass'n*, 195 Colo. 253, 577 P.2d 748 (Colo.1978). Also, although a contractual clause may have different legal effects in various jurisdictions, the existence of such different legal effects does not render the clause ambiguous for the purpose of our interpreting it. *Fibreg-*

*las Fabricators, Inc. v. Kylberg*, 799 P.2d 371 (Colo.1990).

The judgment is affirmed.

JONES and REED, JJ., concur.