**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

GERALD H. PHIPPS, INC., d/b/a GH
Phipps Construction Company, a Colorado
corporation,

      Plaintiff - Appellant,

v.

TRAVELERS PROPERTY CASUALTY
COMPANY OF AMERICA, a Connecticut
corporation,

      Defendant - Appellee.

No. 16-1039
(D.C. No. 1:14-CV-01642-PAB-KLM)
(D. Colo.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **MATHESON**, **McKAY**, and **MORITZ**, Circuit Judges.
_____

After water damaged a building it was renovating, Gerald H. Phipps, Inc.,

d/b/a GH Phipps Construction Company, ("GHP") sought coverage under its

builders' risk insurance policy. GHP's insurer, Travelers Property Casualty Company

of America ("Travelers"), denied the claim, and GHP sued for breach of contract,

common law bad faith, and statutory bad faith. GHP also sought a declaratory

judgment regarding coverage. The district court granted summary judgment for

_____

[*] This order and judgment isn't binding precedent, except under the doctrines
of law of the case, res judicata, and collateral estoppel. But it may be cited for its
persuasive value. *See* Fed. R. App. P. 32.1; 10th Cir. R. 32.1.

Travelers on all claims, and GHP appeals. Because we agree with the district court that GHP doesn't seek damages for a loss to covered property, we affirm.

The University of Denver hired GHP to renovate and expand the University's library. Because the library contained asbestos, the University hired two companies—Excel Environmental and Herron Enterprises—to perform environmental testing and asbestos mitigation in conjunction with the renovation. But the University wanted to avoid the cost of removing asbestos in two elevator shafts and four stairwells, so it limited the scope of GHP's renovations in those areas. Specifically, GHP planned to remove and replace handrails in the stairwells; update lighting fixtures; repair existing concrete floors; patch and paint the existing drywall; and install new or reroute existing mechanical, plumbing, and electrical systems.

GHP was completing installation of a new roof on the library when water from melting snow leaked into the building. The water damaged existing drywall and insulation in the stairwells and elevator shafts that GHP planned to preserve and update ("the damaged areas"). Before the snowmelt mishap, GHP had completed some preliminary work in the damaged areas to designate locations for future installation of mechanical, plumbing, and electrical systems. But GHP hadn't yet installed any new materials, updated any lighting fixtures, or patched and painted any existing drywall in the damaged areas.

GHP notified Travelers of the water damage and initiated a claim under its builders' risk insurance policy ("the policy"). Following an initial inspection,

2

Travelers advised GHP the loss was covered. GHP then hired Excel and Herron to perform environmental testing and asbestos removal in the damaged areas, ultimately incurring $804,661.76 in costs to remove asbestos, remove and replace drywall, and install new fire-proofing materials in the damaged areas before it could proceed with its planned renovations in those areas.

But after further review of the policy, Travelers notified GHP the loss wasn't covered after all; it explained that "the damage was only to the existing building and not to [GHP's] work." App. vol. 1, 116. Citing the policy's definition of "Builders' Risk," which expressly excludes "[b]uildings or structures that existed at the 'job site' prior to the inception of th[e] policy," *id.*, Travelers formally denied GHP's claim.

Almost one year later, GHP asked Travelers to reconsider its denial of coverage. In response, Travelers acknowledged that GHP had completed preliminary work in the damaged areas before the water damage occurred. But Travelers explained that the policy would cover GHP's completed work only if "the water damaged material or items installed by GHP" in the damaged areas. App. vol. 4, 412. Because its investigation showed that the water instead damaged only "portions of the existing structure" and that GHP's preliminary work didn't include installing any new materials or items in the damaged areas, Travelers reaffirmed its initial decision to deny coverage. *Id.* at 404.

GHP sued Travelers, seeking a declaratory judgment on coverage and also asserting claims for breach of contract, common law insurance bad faith, and

statutory insurance bad faith. Travelers moved for partial summary judgment on the statutory bad faith claim. The district court granted the motion, concluding that Colorado's one-year statute of limitations barred the statutory claim.

Travelers then moved for summary judgment on the remaining claims. The district granted that motion as well, concluding that GHP failed to demonstrate a loss to covered property. The court reasoned that GHP didn't introduce evidence establishing (1) that the water damaged GHP's own work in the damaged areas or (2) that GHP sought damages for the costs of redoing its own work in those areas. The court further reasoned that the damaged areas, as existing structures, were excluded from coverage under the policy's definition of "Builders' Risk." App. vol. 5, 501. GHP appeals both summary judgment orders.

## DISCUSSION

We review the district court's decision to grant summary judgment de novo, applying the same legal standard as the district court and viewing the record, and all reasonable inferences that might be drawn from it, in GHP's favor. *Forney Indus., Inc. v. Daco of Mo., Inc.*, 835 F.3d 1238, 1251 (10th Cir. 2016). Summary judgment is appropriate if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

GHP first challenges the district court's order granting summary judgment on its breach of contract, common law bad faith, and declaratory judgment claims, arguing that the district court incorrectly interpreted the policy. Thus, we begin our analysis by considering the policy's plain language. *See State Farm Mut. Auto. Ins. v.*

4

*Stein*, 940 P.2d 384, 387 (Colo. 1997) (noting that Colorado courts enforce insurance policies as written, unless the policy language is ambiguous).[1]

The policy provides that Travelers "will pay for direct physical loss of or damage to Covered Property from any of the Covered Causes of Loss." App. vol. 3, 277. The policy defines "Covered Property" as "Builders' Risk." *Id.* The policy then defines "Builders' Risk" as

> Property described in the Declarations under "Builders' Risk" owned by [GHP] or for which [GHP is] legally liable consisting of:
>
> a.    Buildings or structures including temporary structures while being constructed, erected or fabricated at the "job site";
>
> b.    Property that will become a permanent part of the buildings or structures at the "job site":
>
> (1) While in transit to the "job site" or temporary storage location;
>
> (2) While at the "job site" or at a temporary storage location.

*Id.* at 293.

Critically, the policy expressly provides that "'Builders' Risk' does not include . . . [b]uildings or structures that existed at the 'job site' prior to the inception of th[e] policy." *Id.*

As the insured, GHP has the initial burden of demonstrating coverage. *See Rodriguez ex rel. Rodriguez v. Safeco Ins. Co. of Am.*, 821 P.2d 849, 853 (Colo. App. 1991). If GHP meets this burden, the burden shifts to Travelers to "establish the

---

[1] Colorado law applies in this diversity action. *See Houston Gen. Ins. Co. v. Am. Fence Co.*, 115 F.3d 805, 806 (10th Cir. 1997) ("The interpretation of an insurance contract is governed by state law and, sitting in diversity, we look to the law of the forum state.").

applicability of an exclusion from coverage." *Leprino Foods Co. v. Factory Mut. Ins. Co.*, 453 F.3d 1281, 1287 (10th Cir. 2006) (quoting *Fire Ins. Exch. v. Bentley*, 953 P.2d 1297, 1301 (Colo. App. 1998)). And, if Travelers shows that an exclusion applies, the burden shifts back to GHP to show the applicability of an exception to the exclusion. *See Rodriguez*, 821 P.2d at 853.

At the outset, we note that GHP doesn't even attempt to argue in its opening brief that the damaged areas come within section (a) of the "Builders' Risk" definition as either a building or structure that was "being constructed, erected or fabricated at the 'job site.'" App. vol. 3, 293. Other than pointing out that the policy fails to define "structure," GHP makes no discernible argument about this language. Aplt. Br. 25. In its reply brief, GHP argues that section (a)'s reference to a building "while being constructed" is broad enough to include a building under renovation. Aplt. Reply Br. 11. Thus, GHP argues, the policy necessarily covers the entire building while it is being renovated, not just "the specific component of the building that the contractor is working on or has worked on at the time of the loss." *Id.* Because GHP didn't make this argument in its opening brief, we ordinarily would decline to address it. *See Starkey ex rel. A.B. v. Boulder Cty. Soc. Servs.*, 569 F.3d 1244, 1259 (10th Cir. 2009) (stating this court ordinarily declines to review new arguments made in reply brief).

But, as Travelers argues, even assuming GHP could demonstrate that section (a)'s plain language provides coverage for the damaged areas, there's no question that the damaged areas already existed at the job site before the policy's inception. Thus, the

6

damaged areas would be excluded from coverage under the "Builders' Risk" definition's exclusionary language. And we aren't persuaded by GHP's argument that this exclusionary language wouldn't apply because, in GHP's view, the damaged areas are "merely building or structure *components*." Aplt. Br. 25. As the district court reasoned, whether the damaged areas are either "structures[,] or components of a structure or building, the fact remains that [the damaged areas] . . . existed before the inception of the policy." App. vol. 5, 501.

Next, we address the parties' shared assumption that section (a) implicitly provides coverage for damage to GHP's "work," which, according to Travelers, means materials and items that GHP installs on existing structures or in the existing building during renovations. App. vol. 4, 412; *see also* Aplt. Br. 23 (asserting, "Travelers has admitted that coverage exists under its policy in the event that GHP worked on any of the walls damaged by water intrusion."); Aplee. Br. 27 ("The plain language of the policy thus insures GHP's work at the site . . . ."). Relying on that shared assumption, GHP argues that it raised a genuine dispute of material fact about the nature and scope of the preliminary work it performed in the damaged areas, thus precluding summary judgment.

But even if we assume that (1) section (a) implicitly provides coverage for a loss to any materials or items GHP installed on or in the damaged areas, (2) the water damaged GHP's preliminary work in those areas, and (3) GHP had to redo that preliminary work, these assumptions don't advance GHP's assertion that it seeks damages for a covered loss. Instead, GHP seeks the costs of removing existing

7

asbestos, replacing damaged insulation, and removing and replacing existing, damaged drywall.[2] Thus, GHP seeks recovery for the loss to the damaged areas themselves, not for any loss to its preliminary "work" in those areas. And, as we've discussed, the policy expressly excludes the damaged areas from coverage as "[b]uildings or structures that existed at the 'job site' prior to the inception of th[e] policy." App. vol. 3, 293.

Thus, whether GHP seeks coverage for the damaged areas under section (a)'s explicit language or under some shared assumption that section (a) implicitly covers GHP's "work" to existing buildings or structures during a renovation project, the policy's exclusionary language applies.

Finally, GHP makes no cogent argument that the damaged areas come within section (b) of the "Builders' Risk" definition. GHP points out that the policy doesn't

---

[2] In attempting to establish that it seeks costs for redoing its preliminary work in the damaged areas, GHP directs us to three portions of the record: (1) a summary of damages attached to its proposed supplement to the civil scheduling order, (2) its entire response to Travelers' summary judgment motion, and (3) testimony from GHP's superintendent, Don Johnson, and GHP's president, Kurt Klanderud. But those portions of the record don't establish that GHP seeks anything other than restoration costs. First, GHP's summary of damages only lists invoices GHP paid for water and asbestos mitigation, not for redoing any layout and penetration work. Second, while GHP fails to point us to a specific page or portion of its response to Travelers' summary judgment motion, we did find a conclusory assertion that "GHP now seeks recovery of amounts expended to remove the drywall and perform the necessary abatement work, which was necessary to restore the [damaged areas] to their pre-water intrusion condition." App. vol. 5, 430. But that statement supports our conclusion that GHP seeks restoration costs, not GHP's assertion that it seeks costs for redoing its own work. Finally, Johnson and Klanderud both testified that GHP completed preliminary work in the damaged areas. But neither Johnson nor Klanderud testified that GHP incurred or sought costs for redoing that work. Thus, we agree with the district court's conclusion that GHP doesn't seek damages for the costs of redoing its own work.

8

define the term "structure" and argues that the damaged areas must therefore constitute "[p]roperty that will become a permanent part of the buildings or structures at the 'job site.'" Aplt. Br. 25 (emphasis omitted) (quoting App. vol. 3, 293). It further argues that because the "Builders' Risk" definition excludes existing "buildings or structures" but doesn't exclude existing "property," treating the damaged areas as "property" renders the exclusionary language inapplicable. Aplt. Br. 25-26. But we agree with Travelers that section (b) provides coverage for personal property—i.e., fixtures or building materials—that will become part of the permanent buildings or structures "being constructed, erected, or fabricated at the 'job site.'" App. vol. 3, 293. *See, e.g.*, 5-50 New Appleman on Insurance Law Library Edition § 50.02[c][i] (2016) ("Property covered under a builders risk policy usually includes the structures on the construction site, as well as materials that have not yet been incorporated into the structure."). Because, GHP makes no claim for damage to its personal property at the job site, the second basis for "Builders' Risk" coverage is also inapplicable.

In sum, because GHP doesn't seek damages for a loss to covered property, we affirm the district court's order granting summary judgment in favor of Travelers on GHP's claims for breach of contract and common law bad faith, and on GHP's request for a declaratory judgment on coverage. And this conclusion makes it unnecessary for us to resolve whether, as GHP argues, the district court erroneously concluded that GHP's statutory bad faith claim was time-barred. Instead, we affirm the district court's order granting summary judgment to Travelers on that claim

because—for the reasons discussed above—GHP failed to demonstrate a loss to covered property. *See MarkWest Hydrocarbon, Inc. v. Liberty Mut. Ins. Co.*, 558 F.3d 1184, 1193 (10th Cir. 2009) ("It is settled law in Colorado that a bad faith claim must fail if, as in the case here, coverage was properly denied and the plaintiff's only claimed damages flowed from the denial of coverage."); *see also Richison v. Ernest Grp., Inc.*, 634 F.3d 1123, 1130 (10th Cir. 2011) ("We have long said that we may affirm on any basis supported by the record, even if it requires ruling on arguments not reached by the district court or even presented to us on appeal.").

Affirmed.

Entered for the Court

Nancy L. Moritz
Circuit Judge

10