MID–AMERICAN FIRE & CASUALTY COMPANY, Appellant–Third Party Defendant,

v.

SHONEY'S INC. and SHN Properties, LLC, individually and as assignees of Miriam Hedrick and the Estate of Donald E. Hedrick, Appellees–Third Party Plaintiffs,

and

Johnson Oil, LLC, Appellee–Defendant.

No. 49A02–0503–CV–235.

Court of Appeals of Indiana.

March 3, 2006.

Michael E. Brown, Ginny L. Peterson, Kightlinger & Gray, LLP, Indianapolis, for Appellant.

Brent W. Huber, Brian J. Paul, Fred R. Biesecker, Ice Miller, Indianapolis, for Appellees Shoney's Inc. and SHN Properties, LLC.

Christopher J. Braun, John M. Ketcham, Plews Shadley Racher & Braun, Indianapolis, for Appellee Johnson Oil, LLC.

## OPINION ON REHEARING

BAILEY, Judge.

Shoney's Inc. and SHN Properties (collectively, "Appellees") petition for rehearing on *Mid–American v. Shoney's,* · No. 49A02–0503–CV–235, slip. op. at 16–17, 836 N.E.2d 1062 (Ind.Ct.App. Oct. 5, 2005). In that opinion, we held that the Homeowner's Policy at issue did not cover the remediation costs for a petroleum contamination that occurred on property located at 5010 South East Street in Indianapolis, Indiana. In reaching this conclusion, we incorrectly applied the standard policy exclusions, as opposed to those listed in the policy enhancement, to Appellees' claim for personal injury coverage and, thus, we did not address the "business pursuits" exceptions to coverage. However, because we determine that Appellees' claim to liability coverage for remediation costs are excluded from both the standard policy—with respect to the property damage coverage claim—and the policy enhancements—with regard to the personal injury coverage claim—we find our initial analysis to be of no consequence to our ultimate holding in the case. As such, we grant rehearing,

vacate our original opinion, but nevertheless reverse the trial court's partial grant of summary judgment to Appellees and remand for an entry of partial summary judgment in favor of Mid–American.

At the trial level, Appellees sought liability coverage for the remediation costs in

*SECTION II LIABILITY COVERAGES*

| COVERAGE E PERSONAL LIABILITY | If a claim is made or a suit is brought against any *insured* for damages because of *bodily injury* or *property damage* to which this coverage applies, we will: |
|---|---|

    a. pay up to our limit of liability for the damages for which the *insured* is legally liable; and

    b. provide a defense at our expense by counsel of our choice. We may make any investigation and settle any claim or suit that we decide is appropriate. Our obligation to defend any claim or suit ends when the amount we pay for damages resulting from the occurrence equals our limit of liability.

Appellant's App. at 187 (emphasis in original). However, this liability coverage does *not* apply, in part, to property damage "arising out of *business* pursuits of any *insured* or the rental or holding for rental of any part of any premises by any *insured*."[1] *Id.* (emphasis in original).

The personal injury coverage part is controlled by the enhanced policy provisions, which provides:

Under Coverage E—Personal Liability, the definition bodily injury is amended to include personal injury. "Personal injury" means injury arising out of one or more of the following offenses:

1. false arrest, detention or imprisonment, or malicious prosecution;

2. libel, slander or defamation of character; or

3. invasion of privacy, *wrongful entry*.

*Id.* at 174 (emphasis added).[2] The standard Section II Policy Exclusions are inapplicable to the personal injury coverage. Rather, the personal injury coverage does not apply, in pertinent part, to "injury arising out of the business pursuits of any insured." *Id.*

As a result, the personal liability section of the Homeowner's Policy at issue excludes coverage for both property damage and personal injury, which arise out of the business pursuits of the insured. Accordingly, to determine whether Appellees'

---

1. This exclusion does not apply to:

    (1) activities which are ordinarily incident to non-*business* pursuits; or

    (2) the rental or holding for rental of a residence of yours:
      (a) on an occasional basis for the exclusive use as a residence;
      (b) in part, unless intended for use as a residence by more than two roomers or boarders; or
      (c) in part, as an office, school, studio or private garage.

Appellant's App. at 187 (emphasis in original). These exceptions to the business pursuit or rental exclusion do not apply to the present controversy.

2. In brief, Appellees maintained that the seepage of the petroleum into the soil and groundwater constituted a wrongful entry, i.e., a personal injury under the enhanced coverage.

claim to liability coverage for remediation costs is covered by the Policy, we must decide whether the property damage—i.e., the site contamination—and the personal injury—i.e., the contaminant's wrongful entry into the soil—arose out of Hedrick's business pursuits.

■ In that vein, Appellees first maintain that, because Hedrick merely owned a piece of land on which a gas station had formerly been operated, the property damage and personal injury did not arise out of Hedrick's business pursuit, assuming one exists. In particular, Appellee's claim that the ownership was not the efficient and predominating cause of the damage or injury. *See, e.g., Meridian Mut. Ins. Co. v. Purkey,* 769 N.E.2d 1179, 1188 (Ind.Ct. App.2002) (holding that the house fire arose from vehicle maintenance, which was the efficient and predominating cause of the property damage). We find this argument unpersuasive.

Here, no one argues that Hedrick personally placed the underground storage tanks in the ground, failed to properly close them, or otherwise caused them to leak. Instead, Hedrick's personal liability stems from the mere facts that: (1) he owned the Property at a time when leakage occurred; and (2) during the course of his ownership, there was soil and groundwater contamination. *See* Ind.Code § 13–23–13–8.[3] Therefore, Hedrick's ownership of the Property serves as the basis for his liability and is the efficient and predominating cause of the property damage or personal injury in dispute. As a consequence, if Hedrick's ownership of the Property constituted a "business pursuit," then the property damage or personal liability at issue is excluded from coverage. We now address the business pursuit exclusions.

■ Appellees argue that the source of Hedrick's livelihood was his employment as a college professor and, therefore, his ownership of the Property did not rise to the level of a business pursuit. While the Homeowner's Policy defines the term "business" to include "trade, profession, or occupation," it does not provide a definition for the phrase "business pursuit." Appellant's App. at 179. In *Am. Family Mut. Ins. Co. v. Bentley,* 170 Ind.App. 321, 329, 352 N.E.2d 860, 865 (1976), another

---

**3.** Indiana Code Section 13–23–13–8, which governs the liability of an owner or operator for costs, subrogation, or corrective action, provides, in pertinent part:

    (a) Except where an owner or operator can prove that a release from an underground storage tank was caused solely by:
    (1) an act of God;
    (2) an act of war;
    (3) negligence on the part of the state or the United States government; or
    (4) any combination of the causes set forth in subdivisions (1) through (3); the owner or operator of an underground storage tank is liable to the state for the actual costs of any corrective action taken ....
    (b) A person who:
    (1) pays to the state the costs described under subsection (a); or
    (2) undertakes corrective action resulting from a release from an underground stor-

age tank, regardless of whether the corrective action is undertaken voluntarily or under an order ...
is entitled to receive a contribution from a person who owned or operated the underground storage tank at the time the release occurred.

Apparently, pursuant to this statute, after undertaking corrective action to remediate the contamination, Appellees sought a contribution from Hedrick's estate because Hedrick had owned the storage tanks at the time the release or releases occurred. At some point, the Estate agreed that it was liable to Appellees in the amount of $500,000.00 and Appellees agreed to forego execution on the judgment, "except to the extent there is coverage to pay this judgment under Hedrick's policies of liability insurance, including the policy or policies of Mid–American." Appellant's App. at 716.

panel of this Court held that "an insured is engaged in a business pursuit only when he pursues a continued or regular activity for the purpose of earning a livelihood." *See also Asbury v. Ind. Union Mut. Ins. Co.*, 441 N.E.2d 232, 237 (Ind.Ct.App.1982) (observing that "a man's 'profession' or 'occupation' is his stated occupation by which he undertakes to earn a livelihood.") (citing Annot. 48 A.L.R.3d 1098, 1099 (1972)). Therefore, in Indiana, a business pursuit requires a continued or regular activity for the purpose of earning a livelihood. *See also* BLACK'S LAW DICTIONARY 200 (6th ed.1990) (defining "business pursuit" within the meaning of a homeowner's insurance policy as a "continued or regular activity for purpose of earning a livelihood such as a trade, profession, or occupation, or a commercial activity").

In the case at bar, the evidence reveals that, in addition to his employment as a college professor, Hedrick regularly engaged in various business ventures—i.e., "he would invest in a piece of property and then turn it around." Appellant's App. at 760. Hedrick was involved, for example, with the development of the Ski Starlight resort in southern Indiana and, at one point, he invested in a housing development. Hedrick was also involved with the ownership and construction of the Comfort Inn, which was located adjacent to the Property at issue. Indeed, the primary reason for purchasing the Property in dispute was to aid his business endeavor with the Comfort Inn. In a deposition, one of Hedrick's business associates, Billy Wright, explained that the purpose of the Property was "just to have somebody build a restaurant there so our customers from the hotel would have a place to walk across the parking lot, to eat." *Id.* at 864. Accordingly, Hedrick's ownership of the Property constituted a continuous or regular business activity and it is disingenuous to suggest that Hedrick merely "dabbled" in real estate rather than engaging in it as a business pursuit or commercial activity.[4]

As for his livelihood, Hedrick often made more money from his business investments than he did as a college professor. Therefore, it is apparent that Hedrick's purpose in "dabbling" in real estate was to earn an additional livelihood through a commercial activity. As such, Hedrick's ownership of the Property in question constituted a business pursuit and Appellees' claim for remediation costs is excluded from the Homeowner's Policy in question.

The petition for rehearing is granted. We affirm our holding in the original opinion but for different reasons, as clarified in this opinion on rehearing.

SHARPNACK, J., and DARDEN, J., concur.

---

**4.** The fact that Hedrick used various corporate relationships—such as Rushville National Bank, PAC Financial, Ski Starlight, and Career Horizon—to conduct most of his business ventures is of no consequence to our determination that he engaged in continuous or regular business activity. Nor does such determination require us to look behind the corporate forms employed by Hedrick, as we are not seeking to impose liability on Hedrick for the obligations of these corporate entities. Rather, we are merely evaluating Hedrick's involvement in these corporate relationships to determine whether he engaged in continuous or regular business activity.