FILED
United States Court of Appeals
Tenth Circuit

April 12, 2010

Elisabeth A. Shumaker
Clerk of Court

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

SAFECO INSURANCE COMPANY
OF AMERICA,

Plaintiff-Appellee,

v.

RANDY HILDERBRAND, and
RANDY HILDERBRAND AS
SPECIAL ADMINISTRATOR OF
THE ESTATE OF HALEY R.
HILDERBRAND, Deceased,

Defendants-Appellants,

KEITH BILLINGSLY; DOUGLAS
BILLINGSLY; ANIMAL
ENTERTAINMENT PRODUCTIONS;
and LOST CREEK ANIMAL
SANCTUARY FOUNDATION, INC.,

Defendants.

No. 08-3225

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS
(D.C. NO. 6:06-CV-01299-MLB-DWB)**

---

Thomas M. Warner, Jr., Warner Law Offices, P.A., Wichita, Kansas, for
Appellants.

Paul Hasty, Jr., Schmitt, Manz, Swanson, Mulhern, Overland Park, Kansas, for
Appellee.

Before **KELLY**, **EBEL**, and **TYMKOVICH**, Circuit Judges.

**TYMKOVICH**, Circuit Judge.

This insurance case arises out of a tragic accident in which a Siberian tiger attacked and fatally injured Haley Hilderbrand, a 17-year-old high school student, during her senior picture photo shoot. The accident occurred on the property of Keith and Sharon Billingsley, who used their farm to shelter exotic animals. The Billingsleys ran the Lost Creek Animal Sanctuary, a non-profit foundation designed to rescue exotic animals, and Animal Entertainment Productions, a for-profit partnership meant to fund the Sanctuary by exhibiting the rescued animals at magic shows and other events. The tiger involved in the incident was one of the Billingsleys' rescued animals. At the time of the accident, the Billingsleys held a homeowners insurance policy issued by Safeco Insurance Company of America.

Haley's father, Randy Hilderbrand, brought suit against the Billingsleys in state court, seeking monetary damages for Haley's wrongful death. The Billingsleys claimed liability coverage from Safeco. Safeco then filed a declaratory judgment action in federal court, arguing it was not required to provide coverage to the Billingsleys, because the incident arose out of the operation of a business, and the Billingsleys' homeowners policy contained an

exclusion for business pursuits. After a bench trial on the merits, the district court concluded the insurance policy did not cover the incident in question. This appeal followed.

Exercising jurisdiction under 28 U.S.C. § 1291, we conclude the district court correctly applied Kansas law to the insurance policy in question. The homeowners policy does not apply to the Billingsleys' exotic animal rescue and exhibition business, nor does any other exception in the policy apply to the facts of this case.

Accordingly, we AFFIRM.

## I. Background

### A. *Lost Creek Animal Sanctuary*

The facts are largely undisputed. Keith and Sharon Billingsley, along with their son Doug Billingsley, operated Lost Creek Animal Sanctuary on their Kansas farm. The Sanctuary sheltered a variety of exotic animals—including tigers, bears, lions, cougars, monkeys, and alligators—no longer wanted by zoos or circuses. It was incorporated as a non-profit organization in 1994, with the hope that it would be financed through donations.

Donations, however, ultimately proved insufficient to maintain the Sanctuary. In 1999, the Billingsleys created Animal Entertainment Productions (AEP). AEP was formed to generate income by exhibiting the Sanctuary's exotic animals in educational settings or entertainment events such as magic shows.

AEP was a general partnership co-owned by Keith, Sharon, and Doug. To assure AEP's legitimacy as a business, the Billingsleys obtained licenses from state and federal agencies to house and exhibit the animals.

Doug received extensive training in animal handling. He spent time working with magic shows involving large cats, in both Malaysia and on a Singapore-based cruise ship. He also worked in the lion habitat of the MGM Grand Casino in Las Vegas. At times, Doug received a salary from AEP, and engaged in substantial marketing efforts to obtain business for the partnership, even traveling to various locations to meet with potential customers. Although not a large success, AEP did produce a few performances, and occasionally leased its animals to other companies as a source of income.

In 2001, AEP received a Small Business Administration (SBA) loan in the amount of $131,000. Those funds were used to purchase equipment, build a shop, and pay Doug's salary. In general, the Billingsleys used income from other sources—such as Keith and Sharon's full time jobs as social workers—rather than income derived from AEP, to service the loan.

AEP filed tax returns indicating it always operated at a net loss, despite earning some income from shows and sales of animals and equipment. AEP's operating expenses always outweighed the income the partnership generated. Keith, Sharon, and Doug also deducted AEP's losses on their personal tax returns.

*B. August 2005 Accident*

In August 2005, Haley Hilderbrand, who had been volunteering at the Sanctuary, asked to have her high school senior pictures taken with one of the large cats. The Sanctuary had been used for this purpose before, so Doug agreed to the photo shoot. He did not charge Haley for the opportunity. Doug selected one of the tigers, Shaka, based on his assessment of the tiger's mood and his knowledge of its past behavior. During the photo shoot, something went wrong. Despite Doug's training as an animal handler, he lost control of the tiger. It attacked Haley, and she later died from her injuries.

*C. Homeowners Insurance Policy*

While the Billingsleys had at times carried business insurance for AEP, no business insurance policy was in effect when the attack occurred. The Billingsleys, however, did hold a Safeco homeowners insurance policy in August 2005.

The homeowners policy contained language excluding losses for business activities:

LIABILITY LOSSES WE DO NOT COVER

1.     Coverage E - Personal Liability and Coverage F - Medical Payments to Others do not apply to *bodily injury* or *property damage*: . . .

      b.     arising out of *business* pursuits of any *insured* . . .

      This exclusion does not apply to:

> (1)    Activities which are ordinarily incident to non-*business* pursuits[.]
>
> *    *    *
>
> *'Business'* includes trade, profession or occupation.

Aplt. App. at 42, 49 (italics in original).[1]

The district court denied liability coverage under this provision.

## II.  Analysis

In cases arising under federal diversity jurisdiction, we apply the law of the forum state, in this case, Kansas.  *Wankier v. Crown Equip. Corp.*, 353 F.3d 862, 866 (10th Cir. 2003).  Here, we thus defer to the most recent judgments of the Kansas Supreme Court, and if no controlling precedent exists, we attempt to predict how that court would rule.  *Id.*  The decisions of lower state courts are persuasive, but not binding.  *Long v. St. Paul Fire & Marine Ins. Co.*, 589 F.3d 1075, 1081 (10th Cir. 2009).

The interpretation of an insurance policy is a matter of law.  *MarkWest Hydrocarbon, Inc. v. Liberty Mut. Ins. Co.*, 558 F.3d 1184, 1190 (10th Cir. 2009); *AMCO Ins. Co. v. Beck*, 929 P.2d 162, 165 (Kan. 1996).  Therefore, we review the district court's construction of the insurance policy de novo.  *Valley Improvement Ass'n v. U.S. Fid. & Guar. Corp.*, 129 F.3d 1108, 1115 (10th Cir. 1997).  We review the trial court's fact findings for clear error.

---

[1]  Italics indicate terms that are defined elsewhere in the policy, such as the term "business."

### A. *Business Pursuits Exclusion*

Safeco contends it is not required to provide coverage because the incident in question arose out of a business pursuit of the insured. To defeat the exclusion, Mr. Hilderbrand argues that AEP had ceased to be a business pursuit under the policy before the accident. In his view, the Billingsleys' care of the animals had become more akin to a hobby, and therefore the exclusion should not apply.

To apply the business pursuits exclusion, Kansas courts adopted a test "overwhelmingly followed" by other state courts. *Krings v. Safeco Ins. Co.*, 628 P.2d 1071, 1074 (Kan. App. 1981). "To constitute a business pursuit, there must be two elements: first, *continuity*, and secondly, the *profit motive*." *Id.* (emphasis added). *See also* Appleman on Insurance § 4501.10, n.4 (in general, business pursuits exception requires "continuity consisting of customary engagement or stated occupation and profit motive requiring that activity be shown as a means of livelihood, gainful employment, means of earning a living, procuring subsistence or profit, commercial transactions or engagements").

As to the first element, "there must be a customary engagement or a stated occupation." The second element requires a showing of "such activity as a means of livelihood, gainful employment, means of earning a living, procuring subsistence or profit, commercial transactions or engagements." *Krings*, 628 P.2d at 1074; s*ee also Beck*, 929 P.2d at 166.

## 1. *Continuity*

Kansas case law provides an instructive application of the continuity element. In *Krings v. Safeco Insurance Co.*, the insured was sued in his capacity as an officer on the board of a savings and loan association. 628 P.2d at 1073. As an officer, he received a small fee for each board meeting attended. He also invested a significant amount of his own money in company stock. *Id.* The court concluded on these facts that the insured's service as an officer "was a regular activity engaged in with a profit motive" and therefore a business pursuit that was excluded from coverage. *Id.* at 1074. And in *AMCO Insurance Co. v. Beck*, the court addressed the situation of a high-schooler who babysat for two or three days each week while on summer vacation. The court concluded the high-schooler's activity satisfied the element of continuity. 929 P.2d at 170.

The activities of the Billingsleys in operating AEP meet the continuity requirement. During the period in question, Doug held himself out to be a professional animal trainer. AEP paid his salary, and the extensive training he received indicates that this was more than a mere hobby or occasional pursuit. Also, although certain aspects of the business, such as magic shows or photo shoots, only occurred sporadically, the ownership and maintenance of the exotic animals continued uninterrupted from the establishment of the Sanctuary, through AEP's founding, and up until Haley's death. Further, from the time AEP was created, Doug continually attempted to arrange animal performances. While these

attempts were largely unsuccessful, they are themselves evidence that the operation of AEP was a "customary engagement." *Beck*, 929 P.2d at 170.

Mr. Hilderbrand suggests that by the time of the accident, the Billingsleys' business activities were part-time, and therefore do not qualify as business pursuits. As *Krings* and *Beck* attest, however, Kansas has rejected such a narrow interpretation of what constitutes a business pursuit. *See* 628 P.2d at 1074; 929 P.2d at 170.

In short, the activities of the Billingsleys in operating AEP show the engagement in a business over time, including at the time of the accident. The district court correctly concluded the operation of AEP satisfied the continuity element.

### 2. *Profit Motive*

Turning to the element of profit motive, Mr. Hilderbrand contends that the business must generate an actual profit capable of supporting one's livelihood. He points to *Beck*, where the Kansas Supreme Court held that "[s]upplemental income derived from part-time activities may satisfy the profit motive element. However, . . . the income must be *capable* of significantly supplementing one's livelihood or subsistence and contributing to one's living requirements." 929 P.2d at 170 (emphasis in original). Mr. Hilderbrand argues the Billingsleys never made enough money from these business activities to meet the profit motive element. We disagree with his reading of Kansas law.

The *Beck* court explained that the "case really boils down to whether [the insured's] babysitting services were more like occasional babysitting[, which does not qualify as a business pursuit,] or more like professional day care[, which does qualify as a business pursuit.]" *Id.* at 169. While the court did focus on the amount of income derived in deciding this question, its inquiry did not end there. Additional relevant factors bolstered the court's determination: the insured's "hourly wage was well below the minimum wage"; she was not a licensed day-care provider; she did not advertise her services; and she was a "full-time student on summer break." *Id.* at 170–71. The court felt its conclusion that part-time babysitting did not qualify as a business pursuit was "consistent with the fact a reasonable person would not believe that babysitting was the trade, profession, or occupation of this 15-year-old child." *Id.* at 171.

Reviewing the facts of this case, it is clear that the Billingsleys operated AEP with a profit motive, even if no actual profit ever materialized. Their intent in creating the company was to generate enough income to sustain the Lost Creek Sanctuary. Further, the Billingsleys had obtained both state and federal licenses for their business, and Doug was actively involved in advertising and promoting AEP's services. Moreover, the SBA loan, which would eventually need to be repaid, shows that the Billingsleys expected AEP to return a profit at some point. In addition, Doug held himself out as "a professional animal trainer." R. at 154. Finally, AEP filed tax returns during the period in question, and the Billingsleys

wrote off the business losses of the partnership in their own personal tax returns. *See, e.g.*, *Republic Ins. Co. v Piper*, 517 F. Supp. 1103, 1106 (D. Colo. 1981) (personal tax returns claiming business losses important in finding that babysitting services were a business of the insured).

Accordingly, based on reasoning and analysis similar to that applied in *Beck*, the district court correctly concluded the Billingsleys operated AEP with a profit motive.

If we adopted Mr. Hilderbrand's interpretation of this case, homeowners insurance policies in Kansas could cover any business pursuit that was in the end unprofitable. The analysis is not so narrowly focused. For instance, other cases applying the same two-prong test readily acknowledge that "profit *motive*, not actual profit, makes a pursuit a business pursuit." *Grain Dealers Mut. Ins. Co. v. Farmers Alliance Mut. Ins. Co.*, 298 F.3d 1178, 1183 (10th Cir. 2002) (emphasis added) (quoting *Wiley v. Travelers Ins. Co.*, 534 P.2d 1293, 1295 (Okla. 1974)). Based on our reading of Kansas law, one need not show actual profit to satisfy the profit motive element.

\*   \*   \*

In sum, we conclude the Billingsleys operated AEP with both continuity and a profit motive when the incident occurred. At the time of the accident, Doug's "trade, profession or occupation" was animal trainer for AEP. Therefore, AEP qualifies as a business pursuit and any incidents arising from its operation,

-11-

including the tiger attack, are not covered by the Billingsleys' homeowners policy.

*B. Non-Business Activities Exception*

Mr. Hilderbrand also argues that even if AEP is a business pursuit, Safeco is still required to provide coverage. He contends the accident falls within the "non-business pursuits" exception to the homeowners policy issued to the Billingsleys. The policy provides coverage for activities that normally would be excluded as business pursuits if those activities are "ordinarily incident to non-business pursuits." Aplt. App. at 42. Mr. Hilderbrand argues that a photo shoot falls into this category.

"The apparent purpose of the [non-business activities] exception is to maintain coverage for ordinary 'nonbusiness' activities which would generally be covered under the policy, even though those activities may be performed in the course of a business pursuit." *Susnik v. W. Indem. Co.*, 795 P.2d 71, 75 (Kan. Ct. App. 1990). The exception has most commonly been applied in cases involving the care of children.

For example, in *Heinson v. Porter*, 772 P.2d 778 (Kan. 1989), a child was injured when the insured babysitter momentarily left the child unattended to check on a barking dog. The lower court had concluded the babysitter's homeowners policy covered the incident because checking on a dog is ordinarily a non-business activity. The Kansas Supreme Court rejected that conclusion,

instead focusing on the fact that the injury occurred while the insured was engaged in a business pursuit. "It matters not for coverage purposes whether [the insured] left the child unattended to check on her barking dog or to get a clean diaper for the child." *Heinson*, 772 P.2d at 783. According to the court, looking only to the activity directly responsible for the injury would lead to absurd results. "Presumably, if an automobile rolls off a hoist at a repair shop and injures someone while the serviceman is tying his shoelace, the accident occurred as a result of a nonbusiness pursuit." *Id.*

Mr. Hilderbrand argues Haley's injuries arose in connection with a photo shoot, which he claims is ordinarily a non-business activity, or at least is not a common business pursuit of the Billingsleys. Under Kansas law, however, the inquiry must extend to a broader assessment of the incident. In this case, the accident arose out of the Billingsleys' exotic animal shelter and entertainment business. The victim was a volunteer at the Sanctuary, and Doug used business property and his expertise as a trainer for the photo shoot. While not the everyday business of AEP, its animals had been used for photo shoots in the past, and photo shoots were a part of AEP's business.

While there are no reported Kansas cases directly on point, two cases from other jurisdictions are worth mentioning. In a Missouri case, *North River Insurance Co. v. Poos*, 553 S.W.2d 500 (Mo. Ct. App. 1977), the insured was a researcher studying wolves. He occasionally kept a subject wolf at his home as a

-13-

matter of convenience for himself. After the wolf injured a boy visiting his home, the court found that the insured's homeowners policy did not cover this incident, because keeping the wolf at his home was a part of his business pursuits and therefore could not be an activity ordinarily incident to a non-business pursuit. *Id.* at 502.

Likewise, in *Cincinnati Insurance Co. v. Shelby Mutual Insurance Co.*, 542 S.W.2d 822 (Tenn. Ct. App. 1975), the insured ran a zoo, but kept a lioness at his home while the animal was pregnant. The animal injured a child at the insured's house. The court found that keeping the lioness at home was connected with the insured's business of running a zoo, and was not an activity ordinarily incident to non-business pursuits, since "[l]ions are not ordinarily kept at home." *Id.* at 825.

In this case, as in *Poos* and *Cincinnati Insurance Co.*, the Billingsleys' exotic animals were kept at their property in furtherance of their business pursuits, and are not the type of animals normally kept at home as pets. Thus, we agree with the district court that the photo shoot during which the tiger attacked and killed Haley was not an activity "ordinarily incident to non-business pursuits." The non-business activities exception does not apply and Safeco is not required to provide coverage for Haley's wrongful death.

### III. Conclusion

For the foregoing reasons, we AFFIRM the judgment of the district court.